UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CAROLE DAVIS,**
       Plaintiff,
v.
**JACKSON NATIONAL LIFE INSURANCE COMPANY, a Foreign Corporation,**
       Defendant.
_____/

CASE NO.:  2:14-cv-96-SPC-DNF

**JACKSON NATIONAL LIFE INSURANCE COMPANY, a Foreign Corporation**,
       Interpleader Plaintiff,
v.
**CAROLE DAVIS, individually, and CAROLE DAVIS as Personal Representative for the Estate of Kyle Scott Davis**,
       Interpleader Defendants.
_____/

## PLAINTIFF'S MOTION TO DISMISS INTERPLEADER COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff/Interpleader Defendants, CAROLE DAVIS, by and through her undersigned attorney, hereby files her Motion to Dismiss Defendant/Interpleader Plaintiff's Interpleader Complaint, and in support thereof, states as follows:

1. Defendant/Interpleader Plaintiff, JACKSON NATIONAL LIFE INSURANCE COMPANY, a Foreign Corporation (herein after "JACKSON") insured Kyle Scott Davis ("Decedent") under a $500,000 life insurance policy.  The policy named Plaintiff/Interpleader Defendant CAROLE DAVIS (herein after "DAVIS") as the sole beneficiary.

2. Although DAVIS and the Decedent later divorced, the marital settlement agreement stated that both parties would obtain a life insurance policy with the other party as the beneficiary. <u>See</u>: Marital Agreement, attached hereto as Exhibit "A."

1

3. After the Decedent's death on June 28, 2013, JACKSON claimed that DAVIS was no longer the beneficiary due to her divorce and refused to distribute the proceeds of the subject policy to her.

4. On December 20, 2013, DAVIS filed a state court Complaint against JACKSON. JACKSON removed the case in February of this year.

5. On February 20, 2014 JACKSON filed its Counterclaim and Third Party Interpleader Complaint.

6. Immediately thereafter, the undersigned communicated with JACKSON's counsel the fact that there was no disagreement among the alleged beneficiaries, and there was no need to invoke the interpleader because everyone agreed on the allocation. The parties agreed to stand down while a guardianship or guardian ad litem was established for the minor disabled child, so that the agreement could be ratified by the state probate court.

7. It was further agreed that there was precious reason to escalate fees (DAVIS is entitled to fees under Fla. Stat. §627.428) and that by amicably resolving the matter with the minor's interests vetted by the probate court, this matter could be expeditiously put to rest.

8. JACKSON then precipitously filed the instant motion, demanding fees, costs, and otherwise disrupting the planned amicable resolution.

## MEMORANDUM OF LAW

### A.  Standard for Motion to Dismiss.

In ruling on a motion to dismiss, plaintiff's complaint, which must factually be accepted as true, must evidence that there is no set of facts entitling him to relief.  Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1539 (11th Cir. 1991); see also: Luckey v. Harris, 860 F.2d 1012, 1016-17 (11th Cir. 1988); Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). Where plaintiff fails to allege any specific facts committed against him by defendant or identify any injury that he suffered as a result of any conduct by defendant, the dismissal of the case

is proper.  Accord, Merchant v. Mitchell, 241 Ga. App. 173, 525 S.E.2d 710 (1999).  The defendant is entitled to dismissal of the claim if the plaintiff can prove no set of facts in support of the claim that would entitle it to relief.  Davita, Inc. v. Nephrology Assocs., P.C., 253 F.Supp.2d 1370, 1374 (S.D. Ga., 2003). In those cases, Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint on the basis of one or more dispositive issues of law.  Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).  If it is clear as a matter of law that no relief could be granted under any facts that could be proved consistent with the allegations, the claim must be dismissed, regardless of whether it is based on an outlandish legal theory or on a credible but unavailing one. Id.

**B.  Standard for Interpleader Action.**

The party seeking interpleader has the burden of establishing that it is an appropriate mechanism for resolving a dispute.  Metro. Life Ins. Co. v. Carter, 2005 U.S. Dist. LEXIS 25352 (M. D. Fla. Oct. 27, 2005), *quoting* Dunbar v. U.S., 502 F.2d 506, 511 (5th Cir. 1974).  Interpleader is appropriate when there are two or more adverse claimants to a limited fund. 28 U.S.C. §1335(a)(1); see also: Dunbar, 502 F.2d at 511 ("A prerequisite for [an interpleader] action is that the party requesting interpleader demonstrate that he has been or may be subject to adverse claims."). "Because the sole basis for equitable relief to the stakeholder is the danger of exposure to double liability or the vexation of conflicting claims, the stakeholder must have a real and reasonable fear of double liability or vexatious, conflicting claims to justify interpleader." Indianapolis Colts v. Mayor and City Council of Baltimore, 741 F.2d 954, 957 (7th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985) (internal citations omitted).  Interpleader does not depend on the merits, or lack thereof, of the competing claims.  Reliastar Life Ins. Co. v. Knighten, 2005 U.S. Dist. LEXIS 26317, at *3 n. 6 (M.D. Fla. June 1, 2005).  For the reasons set forth more fully below, the Interpleader Complaint should be dismissed because JACKSON's current obligation to pay DAVIS arise out of the Marital Settlement Agreement and not under the Policy.

**C.  The Complaint for Interpleader Should be Dismissed for Lack of Adverse Parties.**

Interpleader was designed to allow a stakeholder to bring an action joining two or more adverse claimants to a single fund.  In re Mandalay Shores Co-op. Housing Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994). The purpose of interpleader is to protect a stakeholder from the possibility of defending multiple claims.  Reliastar, 2005 U.S. Dist. LEXIS 26317, at *3 (M.D. Fla. June 1, 2005); see also: Fulton v. Kaiser Steel Corp., 397 F.2d 580, 582-583 (5th Cir. 1968) ("The gist of the relief sought is the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing.").   The nature of interpleader was instituted pursuant to 28 U.S.C. §1335. This statute allows a plaintiff that is not wholly disinterested in the funds to bring an interpleader action and claim the funds for itself. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 532 (1967). The jurisdictional requirements to invoke statutory interpleader are: (1) diversity of claimants; (2) an amount in controversy of $ 500 or more; **and** (3) **two or more** adverse claimants to the fund. 28 U.S.C. §1335 (**emphasis** added).

Multiple liability is required to sustain an interpleader action.  Center Partners Mgt., Ltd. v. Cache, Inc., 657 F. Supp. 48, 49 (S.D.Fla. 1986). The interpleader must also allege that such liability would arise as the result of **several parties** claiming an interest in a single fund which the interpleader seeks to deposit into the court registry.  See: Gaines v. Sunray Oil Co., 539 F.2d 1136, 1141 (8th Cir. 1976) (**emphasis** added); Lafayette Corp. v. Bank of Boston Int'l South, 723 F. Supp. 1461, 1465 (S.D. Fla. 1989).

The party seeking interpleader has the burden of establishing that it is an appropriate mechanism for resolving a dispute.  Dunbar v. U.S., 502 F.2d 506, 511 (5th Cir. 1974). Interpleader is appropriate **when there are two or more adverse claimants** to a limited fund. 28 U.S.C. §1335(a)(1) (**emphasis** added); see also: Dunbar, 502 F.2d at 511 ("A prerequisite for [an interpleader] action is that the party requesting interpleader demonstrate that he has been or may

be subject to adverse claims."); <u>Metro. Life Ins. Co. v. Carter</u>, 2005 U.S. Dist. LEXIS 25352, 35-36, 2005 WL 2810699 (M.D. Fla. Oct. 27, 2005).

However, in the instant matter, there are is only one claimant, DAVIS.  The other "claimants" have renounced any claim.  There are no multiple claims.  DAVIS is giving the minor child a significant share subject to probate approval.  Thus, there is no case or controversy. As there is no threat of multiple liabilities, there is no need for interpleader relief.  <u>See</u>: <u>E.J. Saad, P.C. v. Hinkle Metals & Supply Co.</u>, 2012 U.S. Dist. LEXIS 82019 (S.D. Ala. May 22, 2012).  If an interpleader action cannot be sustained unless there is a single fund being subjected to multiple claims neither can such an action be sustained, as a matter of law, if there are no adverse claims against a single fund interpleaded fund.  <u>Lafayette Corp.</u>, 723 F.Supp. at 1465 (vacating interpleader due to lack of multiple claimants); <u>see also</u>: <u>Gaines</u>, 539 F.2d 1136 (8th Cir. 1976); <u>Libby, McNeill, and Libby v. City Nat'l Bank</u>, 592 F.2d 504 (9th Cir. 1979); <u>Cache</u>, 657 F.Supp. at 48.

Moreover, this Court has specifically held that if there are not multiple claimants, then a case will not meet the primary requirement for interpleader, double liability.  <u>See</u>: <u>Johnson v. United States</u>, 566 F.Supp. 1012 (M.D. Fla. 1983).  As such, JACKSON's Interpleader Complaint should be dismissed.

**D.  The Complaint for Interpleader Should be Dismissed for Lack of Jurisdiction.**

Federal courts, being courts of limited jurisdiction, are required to question their jurisdiction *sua sponte* before reaching the merits of a case.  <u>Kelly v. Harris</u>, 331 F.3d 817, 819 (11th Cir. 2003). JACKSON seeks interpleader relief under Federal Rule of Civil Procedure 22.  Under this Rule, JACKSON must demonstrate either federal question subject-matter jurisdiction under 28 U.S.C. §1331, or diversity jurisdiction under 28 U.S.C. §1332.  This Court does not have federal question jurisdiction because, as stated in its Interpleader Complaint, the dispute at the heart of this case is a state law claim over the proceeds of an insurance policy (<u>Fla. Stat.</u> §732.703(2)).  Additionally,

Florida contract law governs interpretation of the Marital Separation Agreement. As such, JACKSON cannot satisfy the requirements of 28 U.S.C. §1335 as it cannot establish federal question subject-matter jurisdiction.

JACKSON therefore must seek to establish diversity jurisdiction, as Rule 22 requires complete diversity between stakeholder and claimants. See Fed. R. Civ. P. 22; Aetna Casualty & Surety Co. v. Ahrens, 414 F.Supp. 1235 (1975, SD Tex) (complete diversity is required for proper jurisdiction under Rule 22 interpleader action). As stated before, there is only one claimant in this matter, DAVIS, a resident of Florida. Under 28 U.S.C.S. §1332(c),

> (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance**, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, **such insurer shall be deemed a citizen of--**
> (A) **every State and foreign state of which the insured is a citizen**;
> (B) every State and foreign state by which the insurer has been incorporated; and
> (C) the State or foreign state where the insurer has its principal place of business; and
> (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

§1332(c) (2013) (**emphasis** added). As such, JACKSON is also a citizen of Florida. Therefore, there is no diversity between the parties.

This Court has held that "Rule 22(1) provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts." State Farm Life Ins. Co. v. Talavera, 2006 U.S. Dist. LEXIS 50038 (M. D. Fla. July 20, 2006), quoting Commercial Nat'l Bank of Chicago v. Demos, 18 F.3d 485, 488 (7th Cir. 1994). Further, "The interpleader provisions of Rule 22 of the Federal Rules of Civil Procedure cannot be invoked as a means of interpleading parties who are (1) beyond the venue limitations of 28 USC §1391(a), restricting venue in diversity of citizenship cases to the district where all plaintiffs or all defendants

reside, or (2) beyond the service of process limitations of Rule 4, restricting service of process to within the territorial limits of the state in which the District Court is held." State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199 (1967). Therefore, no jurisdiction exists for an Interpleader Complaint under Rule 22, and it should therefore be dismissed.

### E. JACKSON Cannot Utilize an Interpleader Action to Avoid Its Obligations Under the Marital Settlement Agreement.

Absent fraud, accident, or mistake a court cannot void a contract between two parties. See: Ayers Enterprises, Ltd. v. Adams, 205 S.E.2d 161 (Ga. App. 1974)). DAVIS and the deceased entered into a binding contract in the Marital Settlement Agreement. Neither JACKSON nor the Court can now undo the Marital Settlement Agreement.

A Middle District of Florida court dismissed an interpleader action filed by an insurance company after a judgment had been rendered in favor of coverage for one of the claimants. See: Harris v. Great Southern Life Ins. Co., 558 F.Supp. 689 (M.D. Fla. 1983). The court found that to permit the interpleader would allow the insurance company to avoid the judgment obtained against it. Id. Here, to allow the interpleader would permit JACKSON to avoid its obligations under the Marital Settlement Agreement and thereby circumvent the reason the Coverage Action was dismissed. A party cannot use an interpleader action as a "convenient escape from duty or labor at the cost of the beneficiaries." See: Royal Neighbors of Am. v. Lowary, 46 F.2d 565, 565 (D. Mont. 1931). Consequently, JACKSON's Interpleader Complaint should be dismissed.

### F. JACKSON is in a Situation of its Own Creation and Has Not Acted in Good Faith.

JACKSON states in its Interpleader Complaint that it was acting as a "mere stakeholder" and is "without fault." Florida courts have consistently held that a "disinterested, innocent stakeholder" must: (1) not be responsible for creating the conflicting claims to the fund; (2) not have instituted the action for his own protection; and, (3) have sought an expeditious judicial determination of the conflicting claims. Campbell v. N. Am. Co. for Life & Health Ins., 2007 U.S. Dist. LEXIS 54886

(M.D. Fla. July 30, 2007) (*citing* Zuckerman v. Alter, 758 So.2d 1172, 1173 (Fla. 4th DCA 2000), *quoting* Rafter v. Miami Gables Realty, Inc., 428 So.2d 351, 353 (Fla. 3d DCA 1983)). Florida case law requires an interpleader to also make a showing that he has "not instituted the action for its own protection." Zuckerman, 758 So.2d at 1173; see also: Drummond Title Co. v. Weinroth, 77 So.2d 606, 610 (Fla. 1955) (en banc) *citing* Brown v. Marsh, 98 Fla. 253, 123 So. 762 (Fla. 1929); Ray v. Travelers Ins. Co., 477 So.2d 634, 637 (Fla. 5th DCA 1985).

In the instant matter, the interpleader action was brought after JACKSON was sued by DAVIS. Courts have determined that such actions are filed to protect the defendant, and are in bad faith. For example, the Rafter court explained that "because the [interpleader company] had waited until after it had been sued before filing its claim in interpleader, the interpleader action was one brought for [its] own protection, disentitling it to fees and costs." Rafter, 428 So.2d at 354; see also: Brown v. Marsh, 98 Fla. 253, 123 So. 762, 764 (Fla. 1929) (finding that the "complainant has a substantial, although not a direct, interest in the result of the litigation"); Travelers Ins. Co., 477 So.2d at 638 (finding that the defendant was "not just an innocent stakeholder in these proceedings."). As such, JACKSON's Interpleader Complaint should not only be dismissed, but DAVIS should be granted attorney's fees for having to bring this motion.

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he has conferred with opposing counsel regarding this motion. The parties do not agree on the resolution of this motion.

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on June _11th__, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that a copy was served electronically via the CM/ECF system to Robert C. Bauroth, Esq. at rbauroth@wickersmith.com and to Christopher H. Jahr, Esq., at cjahr@wickersmith.com and daniel.endrizal@earthlink.net.

**VILES & BECKMAN, LLC**

Attorney for Plaintiff
6350 Presidential Court Suite A
Fort Myers, Florida  33919
Telephone:  (239) 334-3933
Facsimile:   (239) 334-7105
marcus@vilesandbeckman.com
lakisha@vilesandbeckman.com

By:    /s/Marcus W. Viles
       Marcus W. Viles, Esquire
       Florida Bar No.:  0516971

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

Case No.: ___ **12 – DR – 004844**    ___
Division: ____ **Judge: Carlin, John S**    ___

KYLE S. DAVIS _____,
                    Petitioner,

          and

CAROLE A. DAVIS _____,
                    Respondent.


### FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE WITH MINOR CHILD(REN) (UNCONTESTED)

          This cause came before this Court for a hearing on a Petition for Dissolution of Marriage. The Court, having reviewed the file and heard the testimony, makes these findings of fact and reaches these conclusions of law:

1. The Court has jurisdiction over the subject matter and the parties.

2. At least one party has been a resident of the State of Florida for more than 6 months immediately before filing the Petition for Dissolution of Marriage.

3. The marriage between the parties is irretrievably broken. Therefore, the marriage between the parties is dissolved, and the parties are restored to the status of being single.

4. **Marital Settlement Agreement.** The parties have voluntarily entered into a Marital Settlement Agreement and Parenting Plan, and each party has filed the required Family Law Financial Affidavit. Therefore, the Marital Settlement Agreement and Parenting Plan is filed as Exhibit A in this case and is ratified and made a part of this final judgment. The parties are ordered to obey all of the provisions.

5. The Court finds that the parties have the present ability to pay support as agreed to in the marital settlement agreement as ratified and made part of this final judgment.

6. ( ) yes ( X ) no. The wife's former name of *{full legal name}*_____ is restored.


**Florida Supreme Court Approved Family Law Form 12.990(b)(1), Final Judgment of Dissolution of Marriage with Minor Child(ren) (Uncontested) (12/10)**

**Exhibit "A"**

7.   The Court reserves jurisdiction to modify and enforce this final judgment.

DONE AND ORDERED at _Ft. Myers_ , Florida, on _7-19-12_ .

Original order signed by:
Jo~ ~ ~ ~n
C~ ~ ~dge

_____
CIRCUIT JUDGE

A copy of the {*name of document(s)*} FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE WITH MINOR CHILD(REN) (UNCONTESTED) was [Choose **only one**] (  ) mailed (  ) faxed and mailed (  ) hand delivered to the parties listed below on {*date*}_____ by {clerk of court or designee}_____.

Petitioner (or his or her attorney)
Respondent (or his or her attorney)
Other: _____

Florida Supreme Court Approved Family Law Form 12.990(b)(1), Final Judgment of Dissolution of Marriage with Minor Child(ren) (Uncontested) (12/10)

**Exhibit "A"**

# IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT

## IN AND FOR LEE COUNTY, FLORIDA

IN RE:  THE MARRIAGE OF

Case No. _____

KYLE S. DAVIS,

          Petitioner,       Division:_____

     -and-

CAROLE A. DAVIS,

          Respondent.

_____/

## MEDIATED MARITAL SETTLEMENT AGREEMENT

THIS MEDIATED MARITAL SETTLEMENT AGREEMENT is made between the Parties, Kyle S. Davis, Petitioner/Husband and Carole A. Davis, Respondent/Wife, with the assistance of Dennis J. Leffert, Mediator.  The Parties certify that the following statements are true:

1. **Date of Marriage:**      We were married to each other on August 20, 1988, in Mclean County, Normal, Illinois, and are now Husband and Wife.

2. **Date of Separation:**      We have lived separate and apart from the other since April 21, 2012 and desire to settle the equitable distribution of our property and debts, all support and parental obligations arising from the marital relationship and resolve all other claims arising from the marital relationship.

3. **Irretrievably Broken:**    Because of irreconcilable differences (no chance of staying together) we have made this agreement to settle once and for all what we owe to each other and what we expect to receive from each other.  We state herein that nothing has been held back, that we have honestly included everything we could think of in listing our assets (everything we own and that is owed to us), all our debts (everything we owe), and  that we believe the other has been open and honest in this agreement and we mutually agree that this marriage is irretrievably broken.

**Exhibit "A"**

4. **Execute and Exchange**: Each of us agrees to execute and exchange any papers that might be needed to complete this agreement, including deeds, title certificates, etc.

# SECTION I

# EQUITABLE DISTRIBUTION - MARITAL ASSETS AND LIABILITIES

1. **Financial Affidavits**:      Each party has filed a Family Law Financial Affidavit.

2. **Execution and Exchange of Papers**:      Each of the parties agree to execute and exchange any papers that might be needed to complete this agreement, including, but not limited to, deeds, title certificates, all records and documents necessary for preparing tax returns or for effectuating any other part of this agreement, and the like.

3. **Tax Returns**:      All records and documents necessary for preparing tax returns or for effectuating any other part of this agreement shall be exchanged or provided by the party who has possession of said documents to the other party who needs said documents.

4. **Division of Assets**:      The parties shall divide their assets (everything they own and that is owed to them) as follows:  Any personal item(s) not listed below is the property of the party currently in possession of that/those item(s).

   A. **Wife**:      The wife will have title and possession of all of the following, free and clear of any claims of the Husband:

      1. **Bank Accounts**:   All bank accounts and balances in her sole name and possession.

      2. **Furniture, Furnishings & Fixtures**:      All furniture, furnishings and fixtures currently in her sole and exclusive possession.

      3. **Jewelry**:   All jewelry in her sole and exclusive possession.

      4. **All other assets**:   All other assets have already been distributed and she shall keep that which is in her sole and exclusive possession at this time.

      5. **Retirement Accounts**:   Parties have one 401k account through Husband.  The parties agree that the Court shall prepare and order a QDRO dividing said funds fifty percent (50%) for husband and fifty percent (50%) for wife, at the time of division.  Said wife's portion shall be transferred to wife's pre-established retirement account.

   B. **Husband**: The husband will have title and possession of all of the following, free and clear of any claims of the Wife:

      1. **Bank Accounts**:   All bank accounts and balances in his sole name and possession.

2

**Exhibit "A"**

2. **Furniture, Furnishings & Fixtures**:    All furniture, furnishings and fixtures currently in his sole and exclusive possession.

3. **Jewelry**:    All jewelry in his sole and exclusive possession.

4. **All other assets**:    All other assets have already been distributed and he shall keep that which is in his sole and exclusive possession at this time.

5. **Retirement Accounts**:    Parties have one 401k account through Husband. The parties agree that the Court shall prepare and order a QDRO dividing said funds fifty percent (50%) for husband and fifty percent (50%) for wife, at the time of division. Said wife's portion shall be transferred to wife's pre-established retirement account.

C. **Division of Liabilities/Debts**:    The parties have divided their liabilities (everything they owe) and each shall indemnify and hold harmless the other from any claim or cause of action that may result from any liability that is their individual responsibility. Each party shall pay all debts in his/her own name and hold the other harmless for same.

D. **Contingent Assets and Liabilities shall be divided as follows**:    There are no contingent assets or liabilities to be divided in this matter other than a current Chapter 13, bankruptcy filing, Case number 9-08-BIC-02652-ALP. Kyle S. Davis, husband, agrees to have full responsibility for this matter in any and all payments and distribution ordered by the Bankruptcy Court and all reasonable attorney's fees and costs arising out of the Bankruptcy matter.

# SECTION II

# SPOUSAL SUPPORT (ALIMONY)

Kyle S. Davis shall pay to Carole A. Davis the monthly amount of Two Thousand ($2000) dollars. Said monthly payment shall continue for twelve (12) years beginning July 1, 2012.

# SECTION III

# CHILD SUPPORT

1. **Children**: There are four (4) children, three (3) minor, of the marriage, to wit:
    1. Lauren E. Davis, born August 11, 1992 in Mclean County, Illinois;
    2. Collin S. Davis, born July 19, 1994 in Cook County, Illinois;
    3. Peyton C. Davis, born March 8, 1996 in Cook County, Illinois;
    4. Carsyn L. Davis, born June 21, 2003 in Lee County, FL.; and,

3

**Exhibit "A"**

5. There are no child(ren) born or conceived during the marriage who are **not** common to both parties.

2. **Parenting Time**: The parenting time is not contingent upon either party being obligated for child-support so long as the parenting time sharing arrangement in this Agreement is in full force and effect.

3. **Child Support**: Kyle S. Davis, Petitioner/Husband/Father, shall pay child support in accordance with Florida's child support guidelines, section 61.30 of the Florida Statutes, to Carole A. Davis, Respondent/Wife/Mother. The Child Support Guidelines Worksheet, Florida Family Law Rules of Procedure Form 12.902(e), or similar form, is completed and attached.

4. **Support Obligation**: Kyle S. Davis,, Petitioner/Husband/Father, shall be obligated to pay child support in the amount of $2,168.75, every month, beginning June 1, 2012 and continuing until modification by the Court, the youngest child turns 18, becomes emancipated, marries, joins the armed services or dies.

When a Child becomes 18 years of age, or becomes emancipated, marries, joins the armed services or dies, Child Support for that child shall become null and void and any payments thereafter, shall be voluntary and not raise any future obligations upon the part of the party making the payment(s).

When a Child becomes 18 years of age, or becomes emancipated, marries, joins the armed services or dies, Child Support for the remaining child(ren) shall be recalculated in accordance with Florida's child support guidelines, section 61.30 of the Florida Statutes. The Child Support Guidelines Worksheet, Florida Family Law Rules of Procedure Form 12.902(e), or similar form shall be attached to the first adjusted payment to support the payment amount.

5. **Post High School Education**: Kyle S. Davis,, Petitioner/Husband/Father, has agreed and shall be obligated to pay for post high school education, per child, as follows: (1) tuition, based upon the cost of a public education facility, (2) books, study guides and all necessary supplies, (3) room and board in a reasonable amount not to exceed the cost of living in an on-campus dormitory. This obligation shall be for a maximum of four (4) years per child. This obligation shall automatically expire when the child/student turns 23 years of age, marries or joins the armed services.

6. **Health Insurance**: Kyle S. Davis, Petitioner/Husband/Father will maintain health insurance for the parties' child(ren) for as long as the children qualify for coverage under the health insurance plan at Father's employment. The party providing coverage will provide insurance cards to the other party showing coverage. The Father shall continue to provide health insurance and shall not seek any monetary compensation from the Mother. Any uninsured/unreimbursed medical costs for the child(ren) shall be assessed as follows:

A. Paid by Father's Flexible Savings Account, through his employer; and,

4

**Exhibit "A"**

B.      All remaining balances, provided said balances are incurred for 'in network' services, shall be prorated according to the child support guideline percentages.

As to these uninsured/unreimbursed medical expenses, the party who incurs the expense shall submit a paid receipt and request for reimbursement to the other party within 60 days, and the other party, within 30 days of receipt shall submit the applicable reimbursement for that expense, according to the schedule of reimbursement set out in this paragraph. If a paid receipt and request for reimbursement are not submitted within the 60 day time period, said reimbursement for that service/item shall be deemed waived.

7. **Dental Insurance:**      Carol A. Davis, Respondent/Wife/Mother will maintain dental insurance for the parties' child(ren) for as long as the children qualify for coverage under the dental insurance plan at Mother's employment. The party providing coverage will provide insurance cards to the other party showing coverage. Any uninsured/unreimbursed dental costs for the child(ren) shall be assessed as follows:

A.      All remaining balances, provided said balances are incurred for 'in network' services, shall be prorated according to the child support guideline percentages.

As to these uninsured/unreimbursed dental expenses, the party who incurs the expense shall submit a paid receipt and request for reimbursement to the other party within 60 days, and the other party, within 30 days of receipt shall submit the applicable reimbursement for that expense, according to the schedule of reimbursement set out in this paragraph. If a paid receipt and request for reimbursement are not submitted within the 60 day time period, said reimbursement for that service/item shall be deemed waived.

As to these uninsured/unreimbursed dental expenses, the party who incurs the expense shall submit a paid receipt and request for reimbursement to the other party within 60 days, and the other party, within 30 days of receipt shall submit the applicable reimbursement for that expense, according to the schedule of reimbursement set out in this paragraph. If a paid receipt and request for reimbursement are not submitted within the 60 day time period, said reimbursement for that service/item shall be deemed waived.

8. **Life Insurance:**   Each parent shall be required to maintain life insurance coverage for the benefit of the parties' child(ren), in the amount of $500,000. Said funds will be placed into a Trust for the benefit of the children consistent with this paragraph. When the last minor child turns 25, marries, joins the armed services or dies, all funds shall then be equally distributed to the living children.

9. **Auto Insurance for Child(ren):** All vehicles shall be registered in the name of the appropriate parent with the child(ren) being named as part-time drivers. The cost of insurance shall be divided between the parents according to the child support guideline percentages. The cost of insurance shall apply until the child turns 22 years of age.

10. **I.R.S. Income Tax Deduction(s):**      The Father shall claim the child(ren) for Income Tax Deduction purposes.

**Exhibit "A"**

# SECTION IV

# PARENTING PLAN

# ESTABLISHING PARENTAL RESPONSIBILITY AND TIME-SHARING

The parties agree that it is in the best interest of the child(ren) for the Mother and Father to abide by the following guidelines for separate parenting and they mutually agree as follows:

1.     **Shared Parental Responsibility:**    The parents shall exercise their legal right and responsibility to share parental responsibility with each other and to confer, cooperate and make all major decisions jointly.  Each parent shall encourage the other to participate in the child(ren)'s life(s).

2.     **Exchange of Information:**   Each parent shall be entitled to and shall provide the other parent with information from all pediatricians, physicians, dentists, consultants, therapists or specialists attending the minor child(ren), as well as information from teachers, schools, camps, places of worship, etc..

3.     **Relationship with Child(ren):**     Each parent shall exercise, in the utmost of good faith, his/her best efforts at all times to encourage and foster the maximum relations, love and affection between the minor child(ren) and both parents.

4.     **Child(ren) Access to Parents:**    The child(ren) is/are entitled to have access to each parent and to feel free to love each parent without fear of losing either.  This principle includes the opportunity to have access to love and to develop a relationship with either parent's spouse, if applicable, and all grandparents.

5.     **Overlapping Time:**   Neither parent shall make plans for or with the child(ren) that affects the time they have with the other parent without first consulting with that parent and obtaining his/her consent.

6.     **Time Sharing Changes:**    By prior mutual agreement, the parents may exchange or interchange weekends, part of a weekend, birthdays, holidays, vacation days or other periods of time to accommodate their needs as well as the needs of the child(ren).  Each parent shall exercise good faith in cooperation with the schedule of the other.

7.     **Child-rearing and Discipline:**    During their time with the child(ren), each parent shall have the right to follow his/her own style of child-rearing and discipline without unreasonable interference from the other parent and that parent will have the responsibility to make routine decisions on a daily basis unless otherwise stated.  The parents agree to support each other regarding the child(ren)'s commitment to their homework as a priority.

8.     **Friendships and Activities:**  The parents will respect the child(ren)'s need to be with friends and to participate in age appropriate activities.  Therefore, the parent the child(ren) is/are with at a particular time will be responsible for taking the child(ren) to

6

**Exhibit "A"**

school and other activities in which the child(ren) is/are involved, provided the parents have agreed in advance the child(ren) will participate in these activities. The child(ren)'s wishes should be taken into account and consideration before any scheduled event is missed.

9.    **Parental Arguments:**      The parents will not argue and/or fight within the hearing or sight of the child(ren), with the other parent. The parents will not discuss the divorce litigation or their divorce or personal disputes with the child(ren).

10.    **Parental Statements:**      The parents will not say anything to anyone that is bad or negative about the other parent, within the hearing of the child(ren).

11.    **Child(ren) Involvement:**      The parents will not ask the child(ren) to carry messages or child support to the other parent.

12.    **Child(ren) Openness:**      The parents will not make the child(ren) feel the need to hide feelings or information about the other parent.

13.    **Parents' Relationship:**      The relationship between the parents shall be as businesslike as possible: courteous, relatively formal, low-key and public. Each parent shall be courteous and respectful to the other parent, even though at times each parent may not feel the other parent deserves it.

14.    **Child(ren) Communication:** The parent with visitation has a duty to communicate directly with the child(ren) concerning his/her relationship with them to the extent warranted by their age and maturity. The parent with visitation cannot expect the parent with whom the child(ren) resides to continually act as a 'buffer' or 'go-between'. For example, should the parent with visitation be unable to exercise contact, the parent with visitation should explain this directly to the child(ren).

15.    **Parental Attendance at Child(ren)'s Activities:**    Both parents are entitled to participate in and attend special activities in which the minor child(ren) is/are engaged, such as religious activities, school programs, sports events and other extracurricular activities and important events in which the child(ren) participates. Each parent shall keep the other timely notified of these events and activities.

16.    **Itinerary Provided:** An itinerary shall be provided to the parent with visitation in the event the parent with whom the child resides intends to spend any substantial portion of time at some place other than his/her home. Conversely, the parent with visitation shall provide a like schedule if the parent is going to take the child(ren) out of town for any extended period of time.

17.    **Timesharing Transportation:**      The child(ren) shall be transported to and from timesharing by the parents, the parents' spouses or by a third party agreed to by both parents. The conversation of transfer shall be limited to "hello" and "goodbye", even if the party is late. If the party is late, it will not be mentioned or discussed in front of the child(ren).

7

**Exhibit "A"**

18.   **Non-payment Effect on Timesharing**:   Non-payment or late payment of child support is not a reason to deviate from a timesharing schedule. Conversely, denial of timesharing will not justify non-payment or late payment of child support.

19.   **Transportation of Child(ren)**:   Under no circumstances is/are the child(ren) to be transported in a motor vehicle in the physical control of any person who is under the influence of any substance, legal or illegal, which tends to impair either motor or intellectual faculties.

20.   **Child(ren)'s Last Name Reference**:   The child(ren) shall not be referred to by any last name other than the one listed on his/her/their birth certificate(s).

21.   **Parent's Unavailability for Timesharing**: Each parent has the responsibility and duty to offer to the other parent the opportunity to care for the child(ren), whenever reasonably possible, on those occasions when such parent is away overnight due to work or social obligations. Each parent has a right, superior to all third parties, including but not limited to grandparents or stepparents, to care for the child(ren) overnight in the other parent's absence.

22.   **Child(ren)'s Reference to Parent's**:   Neither parent shall encourage or allow the child(ren) to call any person, other than the Father and Mother herein, by names such as Mom, Mommy, Mother, Dad, Daddy or Father.

23.   **Telephone Contact**: When the child(ren) is/are with one parent, the other parent shall be allowed daily telephone contact with the child(ren).

   If a dispute arises about the unlimited nature of telephone contacts, the parties shall agree to have, as a minimum, telephone contact with the child(ren) between the hours of 7:30 p.m. and 8:00 p.m. daily. However, in the event the child(ren) is/are not at home, then, on the same date as the parents' telephone call, the parent with which the child(ren) are visiting shall have the child(ren) initiate a return telephone call to the calling parent.

24.   **Emergencies**: In the event of an emergency, the parent with whom the child(ren) may be with is to make all immediate decisions necessary to preserve the health and welfare of the child(ren). The other parent shall be contacted immediately or as soon thereafter as is reasonably possible after the child(ren)'s safety is secured and prior to contacting any other third parties, other than medical/emergency personnel.

25.   **Current Contact Information**:   Each parent shall provide the other parent his or her current residence address and current residence, cell and work telephone numbers and beeper number, if any. Each party shall notify, in writing, the other party of any and all changes in his or her residence address and current residence, cell and work telephone numbers and beeper number, if any. Such notification(s) shall be done within two (2) calendar days after any such change.

26.   **Traveling**:   Whenever traveling, the parent traveling shall provide the other parent with a written itinerary and contact telephone numbers.

**Exhibit "A"**

27.   **Communication:**   Whenever the parents are in communication with one another concerning child(ren) issues and the conversation departs from the best interest of the child(ren), the communication may be terminated by either party.

Whenever the parents are in communication about a child(ren) issue and reach a momentary impasse, the communication may be terminated by either party for the time being.

28.   **School Choice:**   The child(ren) shall attend the best rated school within either parent's residential zone, as established by the County Board of Education. In the event of a dispute, the parties shall mutually decide upon the best educational opportunity for the child(ren). If an agreement cannot be reached by the parents, the matter shall be submitted to the Court for a final decision.

29.   **School Transportation:**   When the child(ren) reach(s) school age, the parent who has the overnight with the child(ren) shall be responsible for assuring the child(ren)'s timely arrival at school the following morning. The parent who shall be enjoying the evening overnight with the child(ren) shall be responsible for pick-up of the child(ren) from school or after-school care or activity, whichever is applicable.

30.   **Parenting Time:**   The parenting time-sharing plan shall be as follows:

A.   **Normal Parenting Time:**  The normal parenting time agreed to by the parents shall be as follows:

1.   The child(ren) shall spend one (1) day per week with their Father. The specific day shall be agreed upon, by the parents,, at least one (1) week in advance of the specific day. The parents shall act in a reasonable manner in this regard. This schedule shall continue until otherwise agreed to, in writing, by both parents, or by Court Order.

2.   Arrangements for the child(ren)'s pick-up and return shall be agreed upon by the parents at the same time as the overnight is agreed upon.

3.   In the event that either party experiences a change in time or location, regarding employment, residence or other matters that might affect the Exchange, the parties shall have a right to revisit the issues of child(ren)-care.

B.   **Holidays and Special Days:** Holiday visitation shall take precedence over regular visitation and be based upon the calendar of the Public School in which the child(ren) are enrolled.

C.   **Mother's Day/Father's Day:**   The child(ren) shall spend from 6:00 p.m. the evening prior until 6:00 p.m. in the evening of the special day with the appropriate parent.

D.   **Thanksgiving:**   The parents shall alternate with the Mother having Thanksgiving in the even years and the Father in the odd years. Thanksgiving shall be from after school on Wednesday until Thursday evening at 9:00 p.m. unless it is the

9

**Exhibit "A"**

parenting time for that parent, whereupon the parenting time shall end with the child(ren) being exchanged as per the normal schedule stated above. This schedule may be modified by mutual agreement between the parents.

E.    **Christmas Break:**    The Father shall have Christmas in the even years from 10:00 a.m. Christmas Eve Day (December 24th) until 10:00 a.m. on December 26th, when the child(ren) shall be exchanged. In odd years, the schedule shall be reversed with the Mother having Christmas Eve Day and Christmas Day. This schedule may be modified by mutual agreement between the parents.

F.    **New Year's:**  The Mother shall have New Year's Eve and New Year's Day in even years from 10:00 a.m. on New Year's Eve (December 31st) until 10:00 a.m. on January 2nd. In odd years, the schedule shall be reversed with the Father having New Year's Eve and New Year's Day. This schedule may be modified by mutual agreement between the parents.

G.    **Summer Break:**    Each parent shall be entitled to two (2) weeks of uninterrupted summer vacation with the child(ren). The summer vacation may be taken one week each or two consecutive weeks, whichever better serves the parties. The parents shall exchange summer calendars on or before May 1st annually, setting forth their vacation plans. In the event of a conflict, the Mother shall have priority in the even years and the Father shall have priority in the odd years.

H.    **Travel Outside Florida:**    The child(ren) shall be allowed to travel outside of Southwest Florida provided the traveling parent first offers an itinerary in accordance with the best interest of the child(ren) section aforementioned. Any disagreement may be settled by mediation or Court Order.

I.    **Miscellaneous Visitation Issues:**    In the event there is no school, the time for all exchanges of the child(ren) shall be 6:00 p.m. or by mutual agreement between the parents.

J.    **Relocation:**    Relocation issues shall be determined by Florida Statute 61.13001.

## SECTION V

## MISCELLANEOUS

1.    **Attorney's Fees:**    Each party shall be responsible for their own attorney's fees and legal costs except in those instances where a parent is in violation of this Agreement, as determined by a Court of competent jurisdiction.

2.    **Enforcement/Contempt Motion:**    In the event a Motion is required to enforce any of the terms and/or provisions of this Agreement, or for Contempt, the prevailing party shall be entitled to reasonable attorney's fees and necessary costs.

10

**Exhibit "A"**

3.     **Restoration of Maiden Name:**     The Wife does not request restoration of her maiden name.

4.     **Entire Understanding:**     This Agreement contains the entire understanding of the parties who hereby acknowledge that there have not been and are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

5.     **Mutual Release:**     Except as set forth herein, each party releases any and all claims from the other up to the date of the execution of this Agreement.

6.     **Representations of the Parties:**     The parties hereby agree that they have entered into this Agreement freely and voluntarily, believing same to be in their respective best interests and the best interests of their minor child(ren). Each party is, or has had the opportunity to be and has chosen not to be, represented by an attorney of his/her choosing and is satisfied with the representation, or lack thereof, received. The parties acknowledge that neither have received legal advice from the Mediator and that neither have received tax advice from the Mediator or their attorney, if applicable. The parties have made full disclosure to each other and/or are satisfied with their respective knowledge regarding the other party's income, assets and liabilities. The parties intend to be bound by this Agreement and have the Court incorporate same into the Final Judgment of Dissolution of Marriage to be entered in this case. The parties desire that the Court retain jurisdiction to enforce and/or modify this Agreement by Florida law.

7.     **Mandatory Disclosure:**     The parties each waive the requirements of mandatory disclosure in this case.

8.     **Discharge of Attorneys:**     Upon the issuance of the Final Judgment of Dissolution, the attorneys of record, if applicable, shall be discharged in this case.

9.     **Final Judgment:**     All other issues having been resolved, this matter appears ready for a Final Judgment of Dissolution. The Respondent's Answer and Waiver, the Special Interrogatories and Final Judgment are attached hereto and filed herein.

10.     **Possible Invalidity:**     While not saying it will happen, if for any reason a Court finds any part of this Agreement to be invalid, the rest of the Agreement shall remain in full legal force and effect. The part of this Agreement found to be invalid shall remain in full legal force and effect in any Country, State or Jurisdiction in which that part is legal and valid.

11.     **Binding Effect:**     This Agreement applies to anyone acting for or on behalf of either or both parties.

12,     **Signing Agreement:** By signing below, each party states that he/she has had an opportunity to carefully review this Agreement and understands its provisions and agrees it will not be set aside for any reason except by mutual written consent of the parties. Each party has had an opportunity to consult with an attorney, tax advisor or other desired professional of his/her choice, or has waived an opportunity to do so. Each party states that no duress, undue influence, fraud or overreaching has been utilized by any

11

**Exhibit "A"**

party, including Mediator, in the negotiation(s) and that this Agreement is fair and reasonable to all parties. Each party warrants that Mediator, Dennis J. Leffert, has not provided any legal, tax or other advice and has performed no legal, tax or other services to either party prior to or during this Mediation.

IN WITNESS WHEREOF, the parties hereto have set their respective signatures hereby acknowledging that the provisions of this Agreement shall be binding upon their respective heirs, next-of-kin-, executors and administrators.

**I certify that I have been open and honest in entering into this Martial Settlement Agreement. I am satisfied with this Agreement and intend to be bound by it.**


_____        _____

Signature of Husband                              Dated

Printed Name: _____

Address: _____

City, State, Zip: _____

Telephone Number: _____

Fax Number: _____


_____        _____

Signature of Wife                                   Dated

Printed Name: _____

Address: _____

City, State, Zip: _____

Telephone Number: _____

Fax Number: _____


I, Dennis J. Leffert, a nonlawyer, located at 10331 Quail Crown Dr., Naples, FL 34119, 239-560-0014, Florida Supreme Court Mediator Certification No. 23828CFRA, helped Kyle S. Davis, Petitioner and Carole A. Davis, Respondent, fill out and prepare this Agreement.

**Exhibit "A"**

_____        _____
Dennis J. Leffert, Mediator                    Date

**Exhibit "A"**